OPINION
Clarence Campbell, plaintiff-appellant, appeals a decision of the Franklin County Court of Common Pleas. The trial court granted a motion to dismiss in favor of defendants-appellees, Pamela Caine and Paul Duffy. We affirm in part and reverse in part.
Appellant and Caine were married for more than nineteen years. Caine initiated divorce proceedings against appellant in 1994, and the divorce was finalized in April 1996. However, the divorce was not an amicable divorce. On the morning of November 27, 1996, an incident occurred between Caine and appellant after appellant went to Caine's place of employment at the Public Utilities Commission of Ohio ("PUCO"). In her deposition, Caine described the incident as follows.
 Q. Could you tell me what happened on and about November 27th of 1996? Could you tell me in as much detail as you can what happened — what happened on that date at your place of employment?
 A. I went to work. He called my job. I told him I was going to my sister's for Thanksgiving. He told me I was not. I told him I was. He kept calling my job. When I wouldn't take his phone calls anymore, he came to my job.
Q. And then what happened?
 A. Well, knowing his pattern, I went straight to my boss. I asked him — who was Paul Duffy. I asked Paul Duffy to please get him out of my office. He at that point was very upset and screamed obscenities.
Q. Like what?
 A. "You're not going to do my kids like that," and, "Tramp, you're not going to do this," and "You'll never make it to Akron."
 And by this time, this is like 8:00 in the morning, and people are coming in, and I just wanted him out of there. So as he is screaming all of these obscenities and what I'll never be able to do, I just stayed back while [Duffy] was in the way and kind of — as [Duffy] was there, he kind of went back to the elevator.
Caine stated that appellant had been violent towards her the majority of the years that they were married and that he "has hit me, he has thrown me." Caine claimed that one month prior to the incident, appellant followed her and rammed her car with his car. Caine stated that at that time, appellant threatened to "`beat my ass, * * * I'm going to get you, bitch. I'm going to take you out. I should just kill you, you no good bitch. I'm going to get you.'" Caine also stated that she had contacted the prosecutor's office concerning the prior incident. Caine did not contact the prosecutor's office concerning the November 1996 incident.
Caine's boss, Paul Duffy, prepared a statement concerning the November 1996 incident for the private security company for the PUCO building. Duffy's statement reads in part:
 On Wednesday, November 27, 1996, approximately 9:00-9:15 a.m., Pam Caine's ex-husband came to the seventh floor. He apparently said some things that upset her because she came into my office and said, "Paul, will you make him leave." When she came into my office and said that, I really did not know to whom she was referring. I had been working at my computer with my back to the door. I turned and got up from my desk and Pam's ex-husband appeared in my doorway. I started walking towards the door with the intent of telling him to leave the floor, but before I spoke, he turned and walked away. I followed him down the hallway. At some point he called Pam a "bitch" and said that she could not treat the children that way. I followed him though [sic] out conference room towards the elevator. While on the way, he said, "You'll never make it to Akron tonight." I waited by the lobby doors to make sure that he got on a down elevator. He did. He and I never spoke.
After appellant left the office, Duffy contacted Ronald Rose, who was in charge of the PUCO building's security. Rose then contacted the Ohio Highway Patrol and Trooper R.D. Johnson and Sergeant. James Brink came to the PUCO building to interview Caine and Duffy. Caine told Trooper Johnson about the incident and also described previous incidents in which appellant either physically or verbally abused her. When appellant's counsel asked her whether she told Trooper Johnson that "your ex-husband told you that he was going to kill you on that morning," she stated:
 No. Trooper Johnson asked me if I thought he would kill me. I told him, when he goes into those rages, only if he caught me, but that I always made sure when he was in those rages to stay out of his way.
In his deposition, Trooper Johnson stated that Caine told him in the interview that appellant "began threatening that [Caine] was never going to make it to Akron as he was going to kill her." Trooper Johnson also stated that after he had interviewed Caine, he talked with the Franklin County Prosecutor's office and they recommended that charges be filed against appellant. On November 27, 1996, Trooper Johnson filed a criminal complaint against appellant for aggravated menacing, a violation of R.C. 2903.21(A); and domestic violence, a violation of R.C.2919.25(C). The complaint stated that appellant caused Caine to believe that he would cause serious physical harm by saying that he was going to kill her. An arrest warrant was issued for appellant and he was arrested and placed in jail. The criminal complaint against appellant was later dismissed. Trooper Johnson stated that the reason for the dismissal of the complaint was because Caine changed her statement about appellant threatening to kill her.
On June 17, 1997, appellant filed a civil complaint against Caine and Trooper Johnson. Appellant alleged in the complaint that he was maliciously prosecuted by Caine, and that Trooper Johnson and Caine violated Section 1983, Article 42, U.S. Code by causing him to be arrested and jailed. Appellant amended his complaint on March 23, 1998. In the amended complaint, appellant added as defendants Duffy and Sergeant Brink. Appellant alleged in the amended complaint that Duffy engaged in malicious prosecution and that Sergeant Brink and Duffy violated Section 1983, Article 42, U.S. Code by causing him to be arrested and jailed.
On April 27, 1998, Duffy and Sergeant Brink filed a notice with the trial court that they had filed a "Petition for Removal to the United States District Court for the Southern District of Ohio" and the case was later transferred to a federal district court. While the case was before the federal court, appellant filed a second amended complaint with the federal court. On December 18, 1998, the federal court issued a decision dismissing appellant's federal claims against Duffy, Caine, Trooper Johnson, and Sergeant Brink. Since all of appellant's claims based upon federal law had been dismissed, the federal court remanded appellant's malicious prosecution claims which were based upon Ohio law, back to the trial court.
On December 29, 1998, appellees filed a motion to dismiss appellant's second amended complaint pursuant to Civ.R. 12(B)(1) claiming that the court of common pleas did not have jurisdiction. Appellees argued that the Court of Claims should first determine whether appellees were entitled to immunity. On February 19, 1999, the trial court granted appellees' motion finding that "it lacks subject matter jurisdiction over this matter until [appellant] first submits this matter to the Court of Claims to determine whether [appellees] were acting within the scope of their employment, and if so, whether they may nonetheless be afforded immunity from suit." Appellant appeals this decision and presents the following assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT GRANTED APPELLEES' CIV.R. 12(B)(1) MOTION HOLDING THAT O.R.C. §§ 9.86 AND 2743.02(F) DIVEST THE TRIAL COURT OF JURISDICTION.
Appellant argues in his assignment of error that the trial court erred in dismissing appellant's complaint. Appellant claims that it is not necessary for the Court of Claims to determine appellees' immunity because he did not allege that the state is liable.
"Appellate review of a trial court's decision to dismiss a case pursuant to Civ.R. 12(B)(1) for lack of subject matter jurisdiction is de novo." Bain v. Paciotti-Orr (Dec. 2, 1999), Cuyahoga App. No. 75384, unreported, following Shockey v. Fouty
(1995), 106 Ohio App.3d 420. When considering a motion to dismiss for lack of subject-matter jurisdiction pursuant to Civ.R. 12(B)(1), a court is not limited to the allegations in the complaint, but may consider any pertinent matter in making its decision. Howard v. Covenant Apostolic Church, Inc. (1997),124 Ohio App.3d 24, 27.
Appellant alleged in his first amended complaint that at "all times relevant," Caine and Duffy were employed with the Legal Department of the PUCO.[1] Appellant claimed that appellees "invented, made up, and falsely accused [appellant] of threatening defendant Caine with bodily harm." Appellant also claimed that appellees "acting together and in concert and with the purpose of having [appellant] spend Thanksgiving Holidays in jail, [appellees] concocted a false story about what happened at PUCO when [appellant] came to talk to defendant Caine about their daughters." Appellant contended that appellees caused criminal charges to be filed against appellant while knowing that there was no justification for the charges. Appellant further contended that an investigation into the charges against him revealed that he never stated that he was going to kill Caine. He also stated that appellees continued their prosecution of appellant even though they were aware of the conclusions of the investigation.
R.C. 9.86 states in part:
 * * * [N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith or in a wanton or reckless manner.
In other words, state employees are immune from liability for their actions made within the performance of their duties unless their actions are: (1) manifestly outside the scope of their employment or official responsibilities, or (2) made with malicious purpose, in bad faith, or in a wanton or reckless manner. If a claimant proves in the Court of Claims that an officer or employee would be liable "but for the fact that the officer or employee has personal immunity" under R.C. 9.86, "the state shall be held liable in the court of claims" for any action that is timely filed "and that is based upon the acts or omissions." R.C. 2743.02(A)(2).
R.C. 2743.02(F) states in part:
 A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of his employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action.
The key to understanding R.C. 2743.02(F) is understanding the purpose of the Court of Claims. "The Court of Claims was created to become the sole trial-level adjudicator of claims against the state." Friedman v. Johnson (1985), 18 Ohio St.3d 85,87. The state's liability is dependent upon whether a claimant proves that the employee "would have personal liability for his acts or omissions but for the fact that the officer or employee has personal immunity" under R.C. 9.86. R.C.2743.02(A)(2).
 * * * If the Court of Claims determines that the employee's acts did not further the interests of the state, i.e., the employee was acting outside the scope of his employment, maliciously, in bad faith, or in a wanton or reckless manner, the state has not agreed to accept the responsibility for the employee's acts and the employee is personably answerable for his acts in a court of common pleas.
Conley v. Shearer (1992), 64 Ohio St.3d 284, 287.
The determination of whether a public employee is immune should occur in the Court of Claims because R.C. 2743.02(F) grants the Court of Claims "exclusive, initial jurisdiction" to determine whether a public employee is immune from a civil suit. State exrel. Banc One Corp. v. Walker (1999), 86 Ohio St.3d 169, 172. Therefore, it follows that when no party claims that the public employee is immune from a civil suit pursuant to R.C. 9.86, or no evidence supports a finding that the public employee is immune from a civil suit pursuant to R.C. 9.86, there is no need to have the Court of Claims determine whether immunity exists. "It is absurd to contend that [R.C. 2743.02(F)] would apply to a set of facts where there is no possible way to construe the employee's or officer's conduct as being related to his employment." Tschantzv. Ferguson (1989), 49 Ohio App.3d 9, 11.
In the present case, appellees alleged in their motion to dismiss that until the Court of Claims determines that appellees are not entitled to immunity pursuant to R.C. 9.86, appellees are entitled to immunity from appellant's malicious prosecution claim. However, none of the parties present a reasonable argument concerning why Caine should be immune from liability because she is a state employee. Appellees argue that appellant is suing appellees for "actions they committed at the Public Utilities Commission of Ohio while they were on `state time' and acting pursuant to state policy." However, a review of appellant's complaint does not show that he alleged that Caine was on "state time" or acting pursuant to state policy when the actions giving rise to the tort of malicious prosecution occurred. Appellant simply alleged that while appellees were at the PUCO, appellees falsely accused appellant, "concocted a false story about what happened at PUCO when [appellant] came to talk to defendant Caine about their daughters," and caused criminal charges to be filed against appellant. None of these actions were alleged to have been part of a policy or procedure, or to "further the interests of the state." Additionally, appellant does not allege that appellees continued to prosecute appellant while they were within the scope of their employment.
Therefore, we find that there are insufficient facts to show that Caine was within the scope of her employment (and therefore, potentially immune from liability) during the time of her actions that are the basis for appellant's malicious prosecution claim against her. A party should not be allowed to have a civil case transferred to the Court of Claims based solely upon an allegation that they are immune pursuant to R.C. 9.86
without first providing sufficient facts showing why the party may be immune. Since no reasonable construction of the facts in the present case supports a claim of immunity for Caine's actions, there is no reason why the issue of Caine's immunity (and therefore, whether the state is liable) should be determined by the Court of Claims. Therefore, we find that the trial court erred in finding that it did not have jurisdiction over appellant's action against Caine for malicious prosecution.
However, a review of the facts concerning Duffy's scope of his employment present a different conclusion. In his deposition, Duffy stated that after the incident in the office with appellant, he called Ronald Rose who was in charge of the PUCO building's security. Duffy stated that the reason why he called Rose was because he "was following commission and State policy." Rose stated in his deposition:
 * * * We have people who call in to our hotline room who get very abusive. Anything on an abusive — verbal abusive line to where it constitutes a bodily threat or the person thinks they're being threatened, the policy of PUCO is for me to call the State Highway Patrol.
Rose stated that he was the person who called the State Highway Patrol.
Appellant's claim of malicious prosecution is based in part on Duffy's statements made to Rose, which then led to the investigation and arrest of appellant. Also, Duffy claims that he informed Rose because it was "commission and State policy." Therefore, we find that there is a question of fact concerning whether Duffy was acting within the scope of his employment. Even though appellant alleges that Duffy's actions were "malicious" and therefore not within the scope of his employment, whether Duffy is immune should first be addressed and resolved by the Court of Claims.[2]
Accordingly, we overrule appellant's assignment of error in part and sustain appellant's assignment of error in part. We find that the trial court erred in dismissing appellant's claim against Caine. We further find that the trial court did not err in dismissing appellant's claim against Duffy. We affirm in part and reverse in part the trial court's decision. We direct the trial court to prepare an entry and to conduct any further proceedings that are consistent with this opinion.
Judgment reversed in part; sustained in part; cause remanded.
TYACK and KENNEDY, JJ., concur.
[1] Even though the trial court dismissed appellant's second amended complaint which was never filed in the common pleas court, because of the substantial similarity between the second amended complaint and the first amended complaint filed on March 23, 1998, we will review the trial court's decision as if it had dismissed the first amended complaint.
[2] We also note that considering appellant's and Caine's relationship to one another, many of these issues probably should have been resolved in a domestic relations court.